## EDWARD THOMPSON CO. v. AMERICAN LAWBOOK CO.

### (Circuit Court, S. D. New York. February 10, 1903.)

1. INFRINGEMENT OF COPYRIGHT—RECRIMINATION—MATERIALITY OF EVIDENCE.
    In a suit for infringement of copyright, evidence that complainant had itself appropriated the copyrighted matter of third persons is immaterial.
2. SAME—LEGAL ENCYCLOPÆDIAS—APPROPRIATION OF LISTS OF CASES—WHAT CONSTITUTES INFRINGEMENT.
    While the use of lists of authorities cited in a legal encyclopædia, as a guide to original research, is legitimate, the reprinting in a rival publication of such lists, which have been compiled by original labor, is an infringement of copyright; and it is immaterial that the citations reproduced are scattered through text and notes of the piratical publication.

Motion for a preliminary injunction to restrain the further publication and sale of volumes 1 and 2 of defendant's Cyclopædia of Law and Procedure, or of so much thereof as may be found to be an infringement of one or other of two publications copyrighted by the complainant, and known as "American and English Encyclopædia of Law, Second Edition," a rewritten work, of which 19 volumes were published when this suit was brought, and "Encyclopædia of Pleading and Practice," 21 volumes of which had been published when this suit was begun.

Walter Large and Frank P. Prichard, for the motion.
Augustus T. Gurlitz, opposed.

LACOMBE, Circuit Judge. A large part of defendant's affidavits and exhibits is devoted to supporting the contention that much of the matter contained in complainant's copyrighted books has been taken from other copyrighted books, principally digests. So far as the copyrights of the books thus drawn upon are owned by others than defendant, such evidence is immaterial. If the owners do not object to such use of their digests, their acquiescence may be taken to import a license. As to the digests which belong to the defendant, it would seem that the contention now advanced might more properly be made in a direct proceeding against complainant's publications, where the issue would be squarely presented. The circumstance that no such suit appears to have been brought is persuasive to the conclusion that infringement by complainant is, to say the least, doubtful. Moreover, the present application does not charge any pirating of the text of complainant's books; and it seems, therefore, unnecessary to enter into an examination of that text.

It frequently happens, when applications are made for preliminary injunction, that there is much conflict as to the facts, and it is wiser to postpone decision of the questions presented until the conflicting statements of affiants can be sifted by cross-examination. In the case at bar the situation is different. Ascertainment of the fundamental facts rests mainly on a comparison of the publications themselves, and a careful examination of the record presented shows that there is practically no dispute as to the transactions upon which complainant now asks for injunctive relief. In such cases the prin-

ciples of law applicable to those transactions may be stated as well now as they could be on a final hearing, may be reviewed, and probably time and expense may be saved by an early decision.

The competing publications are well-known. Each consists of a series of monographs on various subjects, such as "Accord and Satisfaction," "Actions," "Admiralty," etc., arranged alphabetically, with cross-references. These are written by various subeditors, assisted by a clerical force which gathers data for their use in writing the articles. The method of preparing such a work is thus described in complainant's brief:

> "There is first gathered from the digests the cases found under a particular head in the digests, and these are arranged on cards or slips with the digest paragraph, name of case, etc. These slips are then given to the editor who is to write an article on that particular subject. This editor sends for the original reports of the cases and reads them. In the course of the examination of the reports he finds references to very many cases cited in the opinions which do not appear in the digest paragraphs, either because they have been overlooked, or because they would naturally appear under some other head in the digests, or because they relate to collateral matters proper to be cited by an editor in his constructive work of writing an article, but not proper to be included in a digest of direct decisions. Very many of the cases thus found and examined by the editor—probably a majority of them—will be rejected by him as not cases which should be cited in connection with his argument. The actual additional cases collected by him, therefore, represent only a fraction of the number of cases examined and read. In the end he takes such of these additional cases as he proposes to use, together with such of the digest paragraphs as he thinks appropriate, and makes up his list of cases from which he proposes to write his article, and which he intends to cite therein or refer to in the footnotes. These cases he reads, and then proceeds, with the reports of the cases before him (or the abstracts which he has made therefrom), to write the article, in which article he inserts, either as citations or as footnotes, the cases he has thus gathered."

In preparing the articles in complainant's books, the editors naturally discovered from their study of the cases to which the digests had referred them, other authorities bearing on the subject in hand, which were not to be found in the digests under the same heading. Of those additional authorities thus obtained by original research, many were used in writing the articles, and were enumerated therein, either in text or notes. When defendant's editors began the preparation of their articles, they had before them, as their predecessors had, all the cases turned up under the appropriate head from the digests. In addition thereto, the defendant's clerical force examined the authorities cited in each of complainant's articles, and drew out from them all the citations of cases which appeared in complainant's article but did not appear in any of the digests. In the language of one of defendant's witnesses, these "bare citations of cases from corresponding articles found in complainant's encyclopædias were copied on cards of like color and size with those containing the excerpts from the digests," and furnished to the subeditor who was to write the article. Such of these authorities thus given him as he thought appropriate he used in writing his article, and repeated complainant's citation of them in text or notes. It is quite evident that a considerable amount of time and trouble was thus saved to defendant's editors by the use of what the original

researches of complainant's editors had made easily available. Complainant contends that this is an improper use of its original, copyrighted material.

Complainant, as one feature of its encyclopædia, selected, classified, and arranged the cases defining words and phrases under appropriate headings. Defendant has a like classification, to which, as a mere classification, complainant does not object. Apparently, this was a feature of its work to which complainant devoted much time, trouble, and expense. It caused to be examined, page by page, all the reports of decisions of the American, English, and Canadian courts, and had selected therefrom and classified and arranged the cases defining words and phrases. In this way it got together a very large number of such cases not to be found in the law dictionaries or digests under the title of the word defined. There is nothing in the record to show that defendant made a like page by page examination of all the reports for cases defining words and phrases. It gathered such cases from the digest and from the cases found in complainant's publication. It did not copy the text of complainant in giving a definition, but took the definition from the case itself. It did, however, give a list of all the cases it found defining words and phrases. The complainant's affidavits assert that, in its own articles dealing with subjects covered by articles in defendant's volumes 1 and 2, there are 724 of such cases, and that 293 of these had been previously cited only in the complainant's publications. The defendant's affidavits concede that 210 of the 724 cited by complainant are reproduced by it from complainant's books, and fail to show a citation of these 210 cases elsewhere. The inference is irresistible that to that extent defendant has appropriated the results of complainant's original research, and has published them as part of its own two volumes.

From the above statement of facts, it is apparent that defendant saved time, trouble, and expense by using the lists of cases under each article in complainant's work. Those lists contained many cases not to be found in prior published digests. To that extent complainant had, by original research, blazed the way through the wilderness of the reports, and marked out where timber for each particular article might be found. With complainant's work before him, a student, a practicing lawyer, or a writer could more quickly get in touch with the body of judicial deliverances on the particular subject he had in hand, than he could if he had only the digests and other available publications. It does not follow, though, that, when he availed himself of this short cut which complainant had laid out, he made any illegitimate use of complainant's work. The encyclopædia was designed, prepared, and published, in part, to give just such information to persons who might consult it, and one who bought it bought with it the right to use it as a ready reference to authorities bearing on the subject of his investigations. Had the defendant confined itself to such a use of the material which complainant had gathered by independent search outside of the digests, complainant would have no just cause of complaint. But defendant has gone further. In its own books—themselves designed, prepared,

and published, in part, to give information as to where authorities were to be found—it has reproduced the very lists of cases, notably those defining words and phrases, which complainant had got together by a laborious page by page examination of the reports, and now offers its books containing those lists in competition with complainant's. This is an illegitimate use of complainant's copyrighted books. Suppose that at the end of an article (e. g., the article on "Accord and Satisfaction") defendant had added a "list of all the cases defining the phrase 'accord and satisfaction' which are to be found in the digests and law dictionaries," and had then added this, "The following cases are not included in any digest or dictionary, but will be found to contain definitions of this phrase," and had then printed a list of the cases which complainant's original search had turned up from the reports, and which defendant had taken from complainant's books. There can be no doubt, under the authorities, that such a supplemental list would be condemned as piratical, and it would seem not to change the situation that the cases thus appropriated are scattered as citations through text and footnotes.

The only volumes attacked are Nos. 1 and 2. A different system of compilation has apparently since been put in practice. Complainant may take an injunction against their further publication and sale unless there be eliminated from them the material improperly appropriated. The precise form of the order for injunction will be settled on notice. When it is signed, its operation will be suspended until defendant shall have had a reasonable opportunity to review this decision on appeal. The case, despite the voluminous record, lies really within a narrow compass. The point of law is an interesting one, and is sharply presented, and a final decision upon it may save much future labor in the trial of the cause.